

**SIGNED this 2nd day of December, 2024**

Nicholas W. Whittenburg
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Patty Denice Mitchell | ) | No. 1:24-bk-11001-NWW |
| | ) | Chapter 13 |
| Debtor | ) | |

## M E M O R A N D U M

This case requires the court to determine the scope of 11 U.S.C. § 362(b)(24),

an exception to the automatic stay intended to shield postpetition purchasers of

property of the estate without knowledge of the filing of a bankruptcy case. Specifically,

the court must determine whether the exception validates the purchase of a debtor's

residence at a postpetition foreclosure sale.

Before the court are four matters: 1) a motion to annul the automatic stay filed by

Catamount Properties 2018 LLC ("Catamount"), the postpetition purchaser of property

of the estate; 2) a motion for relief from the automatic stay filed by Catamount; 3) an

objection to confirmation filed by U.S. Bank, N.A. ("U.S. Bank"), the secured creditor

that foreclosed on the debtor's real estate postpetition; and 4) an objection to confirma-

tion filed by the chapter 13 trustee.

The court conducted an evidentiary hearing on those pleadings on September

18, 2024, and at the conclusion of the hearing announced that it was taking the matters

under advisement while also inviting the parties to file supplemental briefs about the

application of 11 U.S.C. § 362(b)(24) to this case.

Based on testimony at the hearing, the parties' pleadings, and relevant portions

of the docket in this case and prior bankruptcy cases involving the debtor's property, the

motions for stay relief and annulment are denied, the objections to confirmation are

overruled, and the debtor is afforded fourteen days to file an amended chapter 13 plan.

## I.    Background

This case's main fact is unfortunate, but not unheard of: U.S. Bank, having a

deed of trust encumbering the debtor's residence, foreclosed on her property after the

petition date.[1] That foreclosure followed five consecutive chapter 13 bankruptcy cases,

spanning seven years.[2]

The first four cases were filed by David John Fridl, the debtor's now-deceased

husband. Mr. Fridl was a maker of the note held by U.S. Bank and the mortgagor under

the deed of trust securing that note. There is no contractual privity between the debtor

---

[1] Petition date: April 25, 2024. Foreclosure: May 9, 2024.

[2] 1:17-bk-11411-SDR (chapter 13 filed March 30, 2017; dismissed March 22, 2019).
1:19-bk-11288-NWW (chapter 13 filed March 27, 2019; dismissed May 23, 2019; reinstatement denied
July 11, 2019). 1:19-bk-13092-SDR (chapter 13 filed July 26, 2019; dismissed January 30, 2020).
1:20-bk-12694-SDR (chapter 13 filed October 13, 2020; dismissed December 8, 2022).
1:22-bk-12771-NWW (chapter 13 filed December 7, 2022; dismissed March 21, 2024).

in this case and U.S. Bank. Each of Mr. Fridl's cases was dismissed, almost always within the first two years of the case. Mr. Fridl always paid into the cases, but he was never able to do so consistently. During his cases, U.S. Bank received distributions on account of its secured claim.

Mr. Fridl passed away without a will on July 31, 2022. Even though Ms. Mitchell is not on the mortgage note and deed of trust, she—as his surviving spouse—and Mr. Fridl's son each inherited an interest in the residence pursuant to Tennessee Code § 31-2-103.

After her husband's death, the debtor commenced case five. That case followed a similar pattern to Mr. Fridl's cases and was dismissed within the first two years because payments were inconsistent, despite Ms. Mitchell making significant plan payments. U.S. Bank filed a claim in that case and received distributions pursuant to the confirmed chapter 13 plan.

As of the commencement of the current chapter 13 case, U.S. Bank maintains that its prepetition mortgage arrearage is almost $40,000. Despite being so far behind, the debtor believes that she can cure that prepetition default within a reasonable time while maintaining mortgage payments that accrue postpetition pursuant to section 1322(b)(5) and, therefore, complete a successful reorganization.

When the debtor filed the bankruptcy petition in this case, she included U.S. Bank on the creditor matrix at the address on the creditor's proof of claim from her prior case. Incidently, that is the same address on the proof of claim U.S. Bank filed in this case. Despite being notified of this bankruptcy case, U.S. Bank foreclosed on the

debtor's home after the petition date.[3] Catamount was the winning bidder at the

foreclosure sale and had no knowledge of this case when it acquired the residence.

The parties have come to the court asking for a variety of relief that can be

grouped as two competing options:

1) U.S. Bank and Catamount request that the court validate the foreclosure and

dismiss the case; and

2) The debtor requests that the court invalidate the foreclosure and confirm her

chapter 13 plan.

## II.    Catamount's Motion to Annul the Automatic Stay

### A.    Introduction

When the debtor filed this case, her interest in the residence as Mr. Fridl's

surviving spouse became property of the estate. 11 U.S.C. § 541(a). Unless an

exception to the automatic stay is applicable or the stay is annulled, U.S. Bank's

postpetition foreclosure violated the automatic stay. *Id.* § 362(a)(4).

Catamount asks the court to annul the automatic stay and validate the foreclo-

sure. It also asserts that it is a good faith purchaser without knowledge of the bank-

ruptcy case, thus qualifying for an exception to avoidance under section 549 and

triggering an exception to the automatic stay under section 362(b)(24).

---

[3] There was no proof that U.S. Bank did not receive notice of Ms. Mitchell's current bankruptcy case prior to the foreclosure. Apparently, U.S. Bank proceeded with the foreclosure because, as Ms. Mitchell was not a party to the note or deed of trust and was not a record owner of the residence, the bank simply did not know that her bankruptcy operated to stay the foreclosure. Of course, U.S. Bank filed a proof of claim in her prior chapter 13 case and had some reason to know that she held an interest in the property at issue. More importantly, notice of a bankruptcy case is not required for the automatic stay to prevent a foreclosure. *See In re Benchmark Capital, Inc.*, 490 B.R. 566, 573–74 (Bankr. E.D. Tenn. 2013); *Tyson v. Hunt (In re Tyson)*, 450 B.R. 754, 764 (Bankr. W.D. Tenn. 2011) (citations omitted).

Those two positions require separate analyses. Annulling the automatic stay to validate the foreclosure sale implies that the automatic stay was in effect to prevent the foreclosure sale. Finding that Catamount was a good faith purchaser without knowledge of this bankruptcy case, however, is a defense to avoidance of the property transfer to Catamount under section 549(c), which may raise an exception to the automatic stay under section 362(b)(24) so that the foreclosure sale was never stayed. Both situations cannot be possible. Either the foreclosure sale was prohibited by the automatic stay, or the foreclosure sale was excepted from the automatic stay. The court begins with analyzing whether the foreclosure sale was excepted from the automatic stay.

### B.    Exception to the Automatic Stay

Courts have recognized for a long time that the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986) (citations omitted). "The automatic stay affords the debtor a 'breathing spell' from all collection efforts, relieving her of financial pressures while proposing a repayment plan." *In re Smith*, 636 B.R. 521, 528 (Bankr. E.D. Tenn. 2021) (citations omitted). The stay also promotes equality of treatment among "creditors by facilitating an orderly administration of the bankruptcy estate and prohibiting any individual creditor from single-handedly carving up the debtor's assets." *Id.* (citations omitted). Because the automatic stay serves such important functions, exceptions to the automatic stay are construed narrowly. *Connor v. Property Fund 629, LLC (In re Connor)*, 632 B.R. 506, 513–14 (Bankr. M.D. Tenn. 2021).

Both U.S. Bank and Catamount maintain that U.S. Bank's postpetition foreclo-sure was excepted from the automatic stay by section 362(b)(24). That provision states, in relevant part, that "[t]he filing of a petition . . . does not operate as a stay . . . of any transfer . . . that is not avoidable under section 549." The question is whether U.S. Bank's foreclosure sale is avoidable under section 549.

Simply stated, section 549(a) allows a trustee to avoid an unauthorized postpetition transfer of property of the estate. That section affords certain defenses to avoidance, however. Relevant to this case, section 549(c) prevents a trustee from avoiding "a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed" in the appropriate recording office before the unauthorized transfer to the purchaser is perfected. U.S. Bank and Catamount maintain that because Catamount qualifies as a "good faith purchaser" under section 549(c), the transfer by the trustee under the deed of trust to Catamount is *not* avoidable as an unauthorized postpetition transfer, and consequently, the foreclo-sure sale and delivery of the trustee's deed transferring the debtor's residence to Catamount were excepted from the automatic stay pursuant to section 362(b)(24).[4]

Catamount and U.S. Bank largely rely on the same opinion for the proposition that section 362(b)(24) exempts foreclosure sales from the automatic stay when the sales are consummated prior to the purchaser's knowledge of a bankruptcy case. *See*

---

[4] At the September 18 hearing, Catamount presented unrebutted testimony that it lacked knowledge of the debtor's bankruptcy, and the court assumes that Catamount paid present fair equivalent value for the property. Further, no party disputes that a notice of the bankruptcy petition was not filed in the applicable real estate recording office.

*Silva v. MBB Props., LLC (In re Silva)*, 665 F. App'x 637 (9th Cir. 2016). The court does not find that case persuasive because that Ninth Circuit panel stated that its decision was not precedential and not appropriate for publication. *Id.* at 638 n.**. More importantly, the court in *Silva* failed to consider the definition of "purchaser" as used in section 549(c).

The definition of "transfer" is defined broadly as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property[,] or an interest in property" and includes "the foreclosure of a debtor's equity of redemption." 11 U.S.C. § 101(54)(C)–(D). Consequently, the transfers subject to avoidance under section 549(a) include both voluntary and involuntary postpetition transfers of property of the estate. The definition of "purchaser" as used in section 549(c), however, is not so broad.

"The term 'purchaser' means transferee of a voluntary transfer . . . ." 11 U.S.C. § 101(43). That definition plainly limits its applicability to voluntary transfers rather than transfers made through a foreclosure sale, tax sale, sheriff's sale, or any other type of involuntary, forced sale. *See Litton Loan Servicing, LP v. Rockdale County (In re Howard)*, 391 B.R 511, 516 (Bankr. N.D. Ga. 2008) (tax sale was not voluntary); *Singleton v. Abusaad (In re Abusaad)*, 309 B.R. 895, 900 (Bankr. N.D. Tex. 2004) (sheriff's sale was not voluntary). The defense to avoidance of an unauthorized postpetition transfer afforded by section 549(c) to a "good faith purchaser" is only available to a purchaser who acquired real property through a voluntary transfer. Consequently, to the extent the transfer of real property through a postpetition foreclo-

- 7 -

sure is otherwise avoidable under section 549, the exception to the automatic stay provided in section 362(b)(24) becomes inapplicable.

If the exception to the automatic stay were held to extend to postpetition foreclosure sales, the efficacy of the automatic stay would be greatly diminished. Third party purchasers at a foreclosure sale like Catamount who are not prepetition creditors of debtors are never given notice of the bankruptcy because debtors have no reason to include potential purchasers on the list of the debtor's creditors to receive notice of the commencement of bankruptcy. In fact, assuming U.S. Bank received no notice of the debtor's bankruptcy prior to the foreclosure sale and assuming it, rather than Catamount, purchased the debtor's home at the foreclosure sale, U.S. Bank arguably would qualify as a good faith purchaser triggering the section 362(b)(24) exception to the automatic stay. Under Catamount and U.S. Bank's expansive interpretation of section 362(b)(24), the automatic stay would no longer be "automatic," thereby depriving debtors of the breathing spell necessary to rehabilitate and endangering the orderly administration of property of the estate for the benefit of creditors.

In this case, Catamount did not acquire the debtor's interest in her residence through a voluntary sale initiated by the debtor. Instead, it acquired the debtor's interest in her residence at a foreclosure sale conducted at the behest of U.S. Bank. Therefore, the "good faith purchaser" defense to avoidance under section 549(a) is unavailable to Catamount, and in turn, the exception to the automatic stay provided by section 362(b)(24) is inapplicable. Because an exception to the automatic stay does not apply, the foreclosure and transfer to Catamount were prohibited by the automatic stay.

- 8 -

### C.      Annulment of the Automatic Stay

The court now turns to whether to annul the automatic stay and validate U.S. Bank's foreclosure on the debtor's home. Section 362(d)(1) states that "the court shall grant relief from the [automatic] stay . . . , such as by . . . annulling . . . such stay for cause."

A postpetition foreclosure sale violates the automatic stay, which is a voidable act that will be voided, except in limited equitable circumstances. *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993). When the Sixth Circuit established that rule, the equitable circumstance it identified was a debtor being "stealthily silent" about filing a bankruptcy case so as to gain some untoward advantage at an innocent creditor's expense. *Id.* at 910–11. There may be other circumstances that would warrant annulling the automatic stay, but the main one identified by the Sixth Circuit relates to withholding notice and using the automatic stay unfairly as a shield against an unfavorable outcome. *Id.* at 911.

Of interest to the court are two opinions by Judge Stair, *In re Benchmark Capital, Inc.*, and *In re Dupuy*. Very generally, *Benchmark Capital* involved a postpetition foreclosure without notice of the bankruptcy case, and Judge Stair found no cause to annul the automatic stay because the case was the debtor's first bankruptcy, and there were no indications of bad faith. 490 B.R. 566 (Bankr. E.D. Tenn. 2013). The foreclosure was voided.

Similarly, in *Dupuy*, there was a postpetition foreclosure without notice of the bankruptcy case, but in that case, Judge Stair found cause to annul the automatic stay

and validate the foreclosure because the bankruptcy case was the debtor's sixth in four years, and frequent skeletal filings on the eve of foreclosure indicated bad faith behavior by the debtor. 308 B.R. 843 (Bankr. E.D. Tenn. 2004). Such skeletal filings could be described as the unfair shield the Sixth Circuit warned against.

Those two opinions bookend a helpful sliding scale for analyzing this case. On one end is the honest but unfortunate debtor who turns to bankruptcy for relief. On the other end is a serial filer using bankruptcy protection to hinder and delay a creditor from exercising its rights.

This case falls somewhere between the bookends established in those decisions. This is only Ms. Mitchell's second case, but it is the sixth consecutive one involving the property. At the hearing the debtor testified that while her husband was alive, he managed the mortgage with U.S. Bank and that she had no knowledge of his bankruptcy cases. Significant amounts of money have been paid toward the mortgage principal, but the arrearage has increased to an eyebrow-raising amount. This case was filed prior to U.S. Bank's foreclosure presumably with an intent to stay the foreclosure, but it is not a skeletal filing. The debtor scheduled U.S. Bank as a creditor, and U.S. Bank received timely notice of the bankruptcy. Because Catamount's bid of $161,000 at the foreclosure sale exceeds U.S. Bank's claim of approximately $149,000, there is equity in the real estate that adequately protects the bank's interest in the property. Finally, and as discussed more fully below, the proof at the hearing established that the debtor possesses a reasonable prospect of reorganizing successfully. Based on those facts, the court finds that this case falls on the *Benchmark Capital* side of the sliding

scale and that no cause exists to annul the automatic stay. Catamount's motion to annul the stay is denied.

### III.    Catamount's Motion for Relief from the Automatic Stay

By separate motion, Catamount has sought relief from the automatic stay so that it may pursue an unlawful detainer action to remove the debtor from her residence. Because the foreclosure sale is void as a violation of the automatic stay, Catamount has no interest in the real property and has no standing to seek relief from the automatic stay to pursue an unlawful detainer action against the debtor. The motion for relief from the automatic stay is denied.

### IV.    U.S. Bank's Objection to Confirmation

U.S. Bank asserts that the plan cannot be confirmed because it was not filed in good faith, the debtor's case was not filed in good faith, and the debtor does not have sufficient income to propose a feasible plan. 11 U.S.C. § 1325(a)(3), (a)(6), (a)(7). The bank also asserts that the plan does not propose to maintain postpetition mortgage payments while curing the prepetition arrearage within a reasonable time. *Id.* § 1322(b)(2), (b)(5).

Good faith is analyzed by a totality of the circumstances. *See Metro Emps. Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988). The debtor has the burden of proving that a plan was proposed in good faith. *See Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990). Some of the nonexclusive factors the court considers are:

1) Amount of the debtor's income from all sources;

2) Living expenses of the debtor and dependents;

3) Amount of attorney's fees in the case;

4) Probable or expected duration of the debtor's proposed plan;

5) The debtor's motivations and sincerity in seeking chapter 13 relief;

6) The debtor's degree of effort;

7) The debtor's ability to earn and the likelihood of fluctuating earnings;

8) Special circumstances, such as inordinate medical expenses;

9) The frequency of the debtor's bankruptcy filings;

10) Circumstances under which the debtor contracted for debts and demon-

strated good faith, or lack of, in dealing with creditors; and

11) The trustee's burden administering the plan.

*See State of Ohio, Student Loan Comm'n v. Doersam (In re Doersam)*, 849 F.2d 237,

239 (6th Cir. 1988).

The basic test for feasibility requires the debtor to show that she "will be able to

make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6).

To satisfy that burden of proof, the debtor need not establish with certainty that she can

complete the plan, but at a minimum, the debtor must demonstrate that she has

sufficient income to satisfy her living expenses while funding payments to creditors

proposed in her plan. *In re Moore*, 602 B.R. 40, 52 (Bankr. E.D. Tenn. 2019).

U.S. Bank largely objects to confirmation because the debtor's proposed plan

payments are insufficient to maintain the mortgage and cure the arrearage. The bank

asserts that ongoing monthly mortgage payments are $931.45 and that the prepetition

arrearage is $39,549.40. The bank asserts that with a monthly net income of $1,419.17,

the debtor cannot afford to increase plan payments to an amount sufficient to maintain and cure the mortgage.

In the debtor's brief opposing U.S. Bank's objection to confirmation, she asserts that she underestimated the arrearage amount because she lacked current information. She maintains that with updated information now, she can adjust her budget to afford the necessary plan payment. To support that conclusion, she amended Schedule J to reflect a monthly net income of $2,578.14. Further, the debtor testified at the hearing that following the dismissal of her prior case, her disposable income increased because she leased space in her residence to a tenant and was no longer paying someone to assist her disabled son while the debtor worked. Further, in the chapter 13 trustee's supplemental brief, the trustee notes that subsequent to the filing of this case, the debtor timely commenced and has continued to make payments necessary to fund the proposed plan as required by section 1326(a).

Amended plan terms have not been proposed, but the court believes that the debtor has demonstrated an ability to make all payments under a chapter 13 plan that makes provision for the cure of U.S. Bank's prepetition arrearage claim within a reasonable time while maintaining ongoing mortgage payments accruing postpetition as authorized by section 1322(b)(5).

Further, the court finds that the debtor filed this case in good faith. The debtor did file this case prior to a foreclosure, but that alone is not indicative of a lack of good faith, particularly because the debtor has presented proof that she has both the ability and intent to pay U.S. Bank as required by the Bankruptcy Code. U.S. Bank makes much of not learning about this case until after the foreclosure sale, but as the court

described earlier, the bank was given prompt notice of the commencement of this chapter 13 case. There was no delayed notice caused by the debtor. Accordingly, the court will overrule U.S. Bank's objection to confirmation of the proposed plan.

Because the debtor has not proposed a chapter 13 plan that timely cures U.S. Bank's arrearage claim, however, the court will not confirm the plan as proposed. Instead, the debtor is afforded fourteen days within which to file an amended chapter 13 plan.

## V.      The Chapter 13 Trustee's Objection to Confirmation

The chapter 13 trustee objected to confirmation solely on the ground that the debtor had not contributed all of her disposable income. In her brief submitted before the September 18 evidentiary hearing, the trustee reported that the higher mortgage arrearage amount listed in U.S. Bank's proof of claim required that the overall plan payment increase to $838.00 biweekly.

In her supplemental brief, the trustee reported that the debtor agreed to increase plan payments to $838.00 biweekly and agreed to an amended wage order being issued for the new plan payment amount. The trustee also reported that to this point in the case, the debtor has paid $9,071.00 and has demonstrated that she can make the increased plan payment. Accordingly, the trustee no longer opposes confirmation.

The trustee's objection to confirmation is overruled.

## VI.      Conclusion

For the reasons stated in this opinion, the court denies Catamount's motions to annul and for relief from the automatic stay, overrules U.S. Bank's objection to confir-

mation, and overrules the chapter 13 trustee's objection to confirmation. The debtor is afforded fourteen days to file an amended plan that proposes cure of U.S. Bank's arrearage claim and ongoing maintenance of the monthly mortgage installments. The court will enter separate orders consistent with this opinion.

# # #